# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHELDON ENGLER and CAROL ENGLER, Individually and as Husband and Wife, Plaintiffs | : : : : | No. |
| v. | : : | |
| TRADER JOES' COMPANY, Defendant | : : | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiffs, Sheldon Engler and Carol Engler, by and through counsel, Cohen, Feeley, Altemose & Rambo, P.C., bring this Complaint against Trader Joe's Company, and in support hereof, aver as follows:

## PARTIES

1. Plaintiff, Sheldon Engler, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 108 W. 26th Street, Northampton, PA 18067.

2. Plaintiff, Carol Engler, is an adult individual and citizen of the Commonwealth of Pennsylvania, residing at 108 W. 26th Street, Northampton, PA 18067.

3. At all times relevant hereto, Plaintiffs, Sheldon Engler and Carol Engler, resided together as husband and wife.

4. Defendant, Trader Joe's Company ("Trader Joe's" or "Defendant") is a corporation, partnership, limited partnership, incorporated association, unincorporated association, limited liability corporation, limited liability partnership or other business entity

that it is a citizen of the State of California with its corporate headquarters located at 800 S. Shamrock Avenue, Monrovia, CA  91016; Defendant is also a resident of the State of New Jersey, maintaining a principle place of business at 259 Allwood Road, Clifton, NJ 08012.

5.   At all times relevant hereto, Defendant owned, managed, supervised, operated, maintained, and controlled all operations of a "Trader Joe's" retail grocery store located at 259 Allwood Road, Clifton, NJ  08012.

6.   At all times relevant hereto, all persons who owned, managed, supervised, operated, maintained and controlled all operations of the aforesaid "Trader Joe's" retail grocery store and all persons who worked at said store, including persons involved with the loading and unloading of delivery trucks, were agents, servants, workmen and/or employees of Defendant acting within the course and scope of their employment and in furtherance of Defendant's business interests.

7.   At all times relevant hereto, Defendant acted individually and by and through its agents, servants, workmen and/or employees of Defendant acting within the course and scope of their employment and in furtherance of Defendant's business interests.

**JURISDICTION AND VENUE**

8.   This Court has diversity jurisdiction under Section 1332(a)(1) of Title 28 of the United States Code, 28 U.S.C. Section 1332(a)(1) and (a)(2).

9.   This Court has venue over this action pursuant to 28 U.S.C. Section 1391(b)(2).

## FACTS

10. At all times relevant hereto, Plaintiff, Sheldon Engler ("Plaintiff"), was an employee of NFI Interactive Logistics, LLC ("NFI") and was working within the course and scope of his employment for NFI.

11. At all times relevant hereto, Plaintiff, Sheldon Engler, was a delivery truck driver for NFI.

12. On or about February 9, 2013, while acting in the course and scope of his employment for NFI, Plaintiff made a delivery of grocery products to the aforesaid "Trader Joe's" store and was a business invitee lawfully on the premises of the "Trader Joe's" store.

13. On the date as aforesaid, Plaintiff parked his delivery truck in the area designed by Defendant for unloading of delivery trucks.

14. On the date as aforesaid and at all times relevant hereto, Defendant did not maintain and/or use a loading dock for the unloading of delivery trucks

15. On the date as aforesaid, and at all times relevant hereto, Defendant created, established, directed, controlled, maintained and enforced a policy, practice, rule, program or procedure, or knew or should have known that its agents, servants, workmen and/or employees were following a policy, practice, rule or procedure for the unloading of delivery trucks whereby (a) for palletized products, Defendant's agents, servants, workmen, and/or employees would pull a stand-up industrial lift truck up to the beds of delivery trucks, the truck driver would use a pallet jack to take the pallets to the rear of the bed of the delivery truck and then Defendant's employees would place the forks of the lift truck through the pallet and remove the pallet from the delivery truck and (b) for non-palletized products

such as those in in trays, Defendant would place the forks of a sit-down industrial lift truck through an empty pallet, pull up to the delivery trucks in said sit-down industrial lift truck, raise the forks until the forks were approximately level with the bed of the delivery truck with the forks abutting the outer edge of the bed, or at most extending a short distance into the bed but not far enough that the pallet on the forks was within the bed, and the truck driver would load trays onto the pallet by manually walking a rolling a hand truck containing the trays onto the pallet, drop the load onto the pallet, exit the pallet and return with another load of trays, and once loaded, the operator of the industrial lift truck would pull away from the truck without warning to the truck driver.

      16. On the date as aforesaid, and at all times relevant hereto, the aforesaid policy, practice, rule, program or procedure, required the truck driver making deliveries to be present on and in the vicinity of the forks and pallet on the raised forks at the rear edge of and outside the bed of the delivery truck at a significant distance from the ground to unload product from the truck, a distance high enough that if the truck driver were to fall from the truck bed or pallet, thus creating an unsafe fall risk presenting a high degree of risk of injury to or death of the driver.

      17. On the date as aforesaid, and at all times relevant hereto, Defendant knew, or should have known, that the aforesaid policy, practice, rule, program or procedure, required the truck driver making deliveries to be present on and in the vicinity of the forks and pallet on the raised forks at the rear edge of and outside the bed of the delivery truck at a significant distance from the ground to unload product from the truck, a distance high enough that if the truck driver were to fall from the truck bed or pallet, thus creating an

unsafe fall risk presenting a high degree of risk of injury to or death of the driver, yet Defendant failed to take steps to eliminate the risks.

18. In the alternative, on the aforesaid date, and at all times relevant hereto, Defendant created, established, directed, controlled, maintained and enforced a policy, practice, rule, program or procedure, whereby its agents, servants, workmen and/or employees were required to pull the sit-down lift trucks unloading unpalletized product and palletized product far enough into the bed of the delivery trucks so that the entire forks and any pallet through the forks was located entirely within the bed of the delivery truck and to take the precautions necessary to protect the truck driver from falling from the truck during the unloading process.

19. In the alternative, on the aforesaid date, and at all times relevant hereto, Defendant knew, or should have known, that if its agents, servants, workmen and/or employees failed to follow the policy, practice, rule, program or procedure, set forth in paragraph 18, the truck drivers would be exposed to an unsafe fall risk as aforesaid, yet Defendant failed to properly train said employees.

20. In the alternative, on the aforesaid date, and at all times relevant hereto, Defendant knew, or should have known, that its agents, servants, workmen and/or employees, were failing to follow the practice, rule, program or procedure set forth in paragraph 18, yet Defendant failed to take reasonable steps to train said agents, servants, workmen and/or employees; to communicate said practice, rule program or procedure to its agents, servants, workmen and/or employees; to discover the violations; and to enforce said practice, rule, program or procedure despite Defendant's knowledge, actual or

constructive, of the high degree of risk of harm to truck drivers resulting from said failure to act.

21.  In the alternative, on the aforesaid date, and at all times relevant hereto, Defendant created, established, directed, controlled, maintained and enforced a policy, practice, rule, program or procedure, whereby its agents, servants, workmen and/or employees who followed the policy, practice, rule, program or procedure set forth in paragraph 15 above were also required to take the precautions necessary to protect the drivers of delivery trucks manually loading product onto the pallet through the forks from falling to the ground.

22. In the alternative, on the aforesaid date, and at all times relevant hereto, Defendant knew, or should have known, that if its agents, servants, workmen and/or employees failed to follow the policy, practice, rule, program or procedure, set forth in paragraph 21, the truck drivers would be exposed to an unsafe fall risk as aforesaid, yet Defendant failed to properly train said employees.

23.  In the alternative, on the aforesaid date, and at all times relevant hereto, Defendant knew, or should have known, that its agents, servants, workmen and/or employees were failing to follow the policy, practice, rule, program or procedure set forth in paragraph 21, yet Defendant failed to take reasonable steps to train said agents, servants, workmen and/or employees; to communicate said practice, rule program or procedure to its agents, servants, workmen and/or employees; to discover the violations; and to enforce said practice, rule, program or procedure despite Defendant's knowledge, actual or constructive, of the high degree of risk of harm to truck drivers resulting from said failure to act.

24.  In the alternative, on the aforesaid date, and at times relevant hereto, Defendant failed to create, establish, direct, control, maintain and enforce any uniform and safe policy, practice, training, rule, program or procedure for the unloading of delivery trucks which eliminated and prevented an unsafe fall risk to delivery truck drivers during the unloading process as aforesaid.

25.  In the alternative, on the aforesaid date, and at times relevant hereto, Defendant knew, or should have known, that it failed to create, establish, direct, control, maintain and enforce any uniform policy, practice, rule, program or procedure for the unloading of delivery trucks which eliminated and prevented an unsafe fall risk to delivery truck drivers during the unloading process despite its knowledge that the lack of said policy, training, practice, rule, program or procedure for the unloading of delivery trucks created an unsafe fall risk to delivery truck drivers as aforesaid.

26.  On the date as aforesaid, Defendant's agent, servant, workman and/or employee pulled the sit-down industrial truck to the back of the delivery truck or the purpose of unloading unpalletized trays, with the lift truck positioned so that the forks rested on the rear edge of the bed but the pallet which was through the forks was outside the edge of the bed of the delivery truck, requiring Plaintiff to load the trays onto the pallet by manually walking a rolling a hand truck containing the trays onto the pallet, dropping the load onto the pallet, and exiting the pallet to retrieve another load of trays.

27.  On the date as aforesaid, Defendant's agent, servant, workman and/or employee knew, or should have known, that he pulled the sit-down industrial truck to the back of the delivery truck or the purpose of unloading unpalletized trays, with the lift truck positioned so that the forks rested on the rear edge of the bed but the pallet which was

through the forks was outside the edge of the bed of the delivery truck, requiring Plaintiff to load the trays onto the pallet by manually walking a rolling a hand truck containing the trays onto the pallet, dropping the load onto the pallet, and exiting the pallet to retrieve another load of trays.

28. On the date as aforesaid, Defendant's agent, servant, workman and/or employee knew, or should have known, that the process being followed to unload the delivery truck created an unsafe fall risk to Plaintiff as aforesaid, yet he followed this process anyway.

29. Defendant's agent, servant, workman and/or employee then pulled away away from the truck without warning to Plaintiff when he knew, or should have known that such action further created an unsafe fall risk and high degree of risk of harm to Plaintiff as aforesaid.

30. Defendant's agent, servant, workman and/or employee and Plaintiff repeated the aforesaid process several times.

31. On the date as aforesaid, Defendant's agent, servant, workman and/or employee returned to the delivery truck for another load of trays and Plaintiff and the same process was followed.

32. Plaintiff dropped a load of trays onto the pallet and while attempting to adjust the trays with his body over the pallet and his one foot on the forks/pallet, Defendant's agent, servant, workman and/or employee suddenly, and without warning, pulled away from the delivery truck, causing Plaintiff to fall to the ground and causing Plaintiffs to suffer the injuries and damages more fully set forth at length below.

33. Defendant's agent, servant, workman and/or employee knew, or should have known, that his conduct set forth above created an unsafe fall risk and high degree of risk of harm to Plaintiff as aforesaid.

## COUNT I

### Sheldon Engler v. Trader Joe's Company

34. Plaintiff, Sheldon Engler, incorporates paragraphs 1 through 33 of this Complaint by reference as if fully set forth at length herein.

35. The injuries and damages to Plaintiff were directly, proximately, substantially, and legally caused by the carelessness, negligence, and recklessness of Defendant, Trader Joe's Company, acting individually and by and through its agents, servants, workmen and/or employees acting within the course and scope of their employment and in furtherance of Defendant's business interests, which consisted of, *inter alia*, the following:

(a). Positioning the lift truck with the pallet through the forks when the pallet and all or most of the forks were located outside the confines of the delivery truck bed;

(b). Failing to observe Plaintiff's location and position before Defendant pulled away from the delivery truck bed;

(c). Permitting Plaintiff to be present at or about and on top of the raised forks and pallet without providing him with fall protection;

(d). Failing to implement a system of communication between Defendant and Plaintiff so that Defendant would be assured that Plaintiff was clear of the forks and pallet before Defendant pulled away from the delivery truck bed;

(e). Failing to pull the lift truck forward sufficient distance so that the entire fork system and pallet were located within the confines of the truck bed when the contents of the truck were being loaded onto the pallets and failing to recognize same;

(f). Failing to install and utilize a properly designed loading docking system for the unloading and loading of delivery trucks;

(g). Ignoring Plaintiff's location and position before Defendant pulled away from the delivery truck bed;

(h).  Failing to ensure that Defendant had a clear view of Plaintiff and was assured that Plaintiff was clear of the forks and pallet before Defendant pulled away from the delivery truck bed;

(i).  Failing to equip the lift truck with headlights when the lighting conditions were inadequate for Defendant to adequately see Plaintiff inside the truck bed and at or about the forks and pallet;

(j).  Failing to wait until the trays were secured by Plaintiff on the pallet before pulling away from the delivery truck bed;

(k).  Failing to see that the trays were not properly secured on the pallet and that Plaintiff needed to and was adjusting same before pulling away from the delivery truck bed;

(l).  Violating Defendant's policies relating to the loading and unloading of delivery trucks when Defendant knew, or should have known, that said violations created a high degree of risk of harm to Plaintiff;

(m).  Failing to use a spotter to ensure that Plaintiff was clear of the forks and pallet before pulling away from the delivery truck bed;

(n).  Failing to supply adequate lighting to the loading and unloading area;

(o). Failing to hire, employ and/or promote various agents, servants, workmen and/or employees with the responsibility and obligation to create, establish, supervise, enforce, and operate a safe loading and unloading area and loading and unloading process and to operate industrial lift trucks;

(p).  Failing to use reasonable care in hiring, employing and/or promoting various agents, servants, workmen and/or employees who had the responsibility and obligation to create, establish, supervise, enforce, and operate a safe loading and unloading area and loading and unloading process and to operate industrial lift trucks;

(q).  Fail to hire, employ and/or promote various agents, servants, workmen and/or employees with the responsibility and obligation to properly supervise the loading and unloading process;

(r). Permitting the various agents, servants, workmen and/or employees who had the responsibility and obligation to create, establish, supervise, enforce, and operate a safe loading and unloading area and loading and unloading process and to operate industrial lift trucks, to continue to work as agents, servants, workmen and/or employees, when said Defendant knew, or should have known, that said agents, servants, workmen and/or employees were unable to and/or incapable of properly performing the requirements of their respective employments;

(s).  Failing to establish rules, policies, procedures and programs to determine whether employees and/or potential employees were and/or are fit and capable of properly performing the requirements of their respective employment;

(t). Failing to establish rules, policies, procedures, and programs governing safe loading and unloading operations when the existence of said rules, policies, programs and procedures would have prevented the accident;

(u). Failing to enforce rules, policies, procedures, and programs governing safe loading and unloading operations when Defendant knew, or should have known, that the failure to enforce said rules, policies, procedures and programs created a high degree of risk of harm to delivery truck drivers;

(v). Failing to train Defendant's employees relating to the rules, policies, procedures, and programs governing safe loading and unloading operations when Defendant knew, or should have known, that the failure to train Defendant's employees relating to said rules, policies, procedures and programs created a high degree of risk of harm to delivery truck drivers;

(w). Violating Defendant's rules, policies, procedures, and programs governing safe loading and unloading operations when Defendant knew, or should have known, that the violation of said rules, policies, procedures and programs created a high degree of risk of harm to delivery truck drivers;

(x). Failing to establish rules, policies, procedures, and programs governing safe industrial lift truck operation when the existence of said rules, policies, programs and procedures would have prevented the accident;

(y). Failing to enforce rules, policies, procedures, and programs governing safe industrial lift truck operation when Defendant knew, or should have known, that the failure to enforce said rules, policies, procedures and programs created a high degree of risk of harm to delivery truck drivers;

(z). Failing to train Defendant's employees relating to the rules, policies, procedures, and programs governing safe industrial lift truck operations when Defendant knew, or should have known, that the failure to train Defendant's employees relating to said rules, policies, procedures and programs created a high degree of risk of harm to delivery truck drivers;

(aa). Violating Defendant's rules, policies, procedures, and programs governing safe industrial lift truck operation when Defendant knew, or should have known, that the violation of said rules, policies, procedures and programs created a high degree of risk of harm to delivery truck drivers;

(bb). Violating ANSI B.56.1 (2009 Ed. And 2012 Ed.), when Defendant knew, or should have known, that the violation of said safety standards created a high degree of risk of harm to delivery truck drivers;

(cc). Failing to discover that Defendant's employees were violating ANSI B.56.1 (2009 Ed. And 2012 Ed.), when Defendant would have discovered said violations upon reasonable inspection and when Defendant knew, or should have known, that the violations of said safety standards created a high degree of risk of harm to delivery truck drivers;

(dd). Failing to train Defendant's employees relating to the requirements of ANSI B.56.1 (2009 Ed. And 2012 Ed.), when Defendant knew, or should have known, that the failure to train Defendant's employees relating to said standards created a high degree of risk of harm to delivery truck drivers;

(ee). Violating OSHA's Industrial Lift Truck Regulations, 29 C.F.R. section 1910.178(a) through (o), when Defendant knew, or should have known, that the violation of said Regulations created a high degree of risk of harm to delivery truck drivers;

(ff). Failing to discover that Defendant's employees were violating OSHA's Industrial Lift Truck Regulations, 29 C.F.R. section 1910.178(a) through (o), when Defendant would have discovered said violations upon reasonable inspection and when Defendant knew, or should have known, that the violations of said Regulations created a high degree of risk of harm to delivery truck drivers;

(gg). Failing to train Defendant's employees relating to the requirements of OSHA's Industrial Lift Truck Regulations, 29 C.F.R. section 1910.178(a) through (o), when Defendant knew, or should have known, that the failure to train Defendant's employees relating to said Regulations created a high degree of risk of harm to delivery truck drivers;

(hh). Conducting loading and unloading operations and operations involving the operation of industrial lift trucks in violation of standards of the industry, when Defendant knew, or should have known, that said conduct created a high degree of risk of harm to delivery truck drivers;

(ii). Failing to discover that Defendant was conducting loading and unloading operations and industrial lift truck operations in violation of the standards of the industry when Defendant knew, or should have known, that such conduct created a high degree of risk of harm to delivery truck drivers;

(jj). Failing to train Defendant's employees relating to the standards of the industry relating to conducting loading and unloading operations and operations involving the operation of industrial lift trucks, when Defendant knew, or should have known, that said failure created a high degree of risk of harm to delivery truck drivers;

(kk). undertake, gratuitously or for consideration, to conduct safe loading and unloading operations and safe operation of industrial lift trucks and fail to perform said duties when such failure increased the risk of harm to Plaintiff and/or Plaintiff

reasonably relied upon Defendant's compliance with said duty by assisting in the unloading of the truck in the manner utilized, in violation of the Restatement (Second) of Torts, Section 323, 324 and 344.

36. Solely as a result of the carelessness, negligence, and recklessness of Defendant as more fully set forth above, Plaintiff was caused to suffer injuries, all of which are or may be permanent in nature, to his bones, joints, muscles, tendons, blood vessels and soft tissues throughout his entire body, both internally and externally, including, but not limited to: lumbar spine fractures; right humerus fracture; contusion to the right humerus; bilateral pulmonary emboli and deep vein thrombosis; pre-synope; and supraventricular tachycardia.

37. Solely as a result of the above incident and injuries sustained thereby, Plaintiff has been and will be in the future obliged to expend various and diverse sums of money for medicine and medical treatment in an effort to cure the above injuries, all to his great financial loss and detriment.

38. Solely as a result of the above incident and injuries sustained thereby, Plaintiff was unable to attend to his usual duties and occupation and thereby suffered loss and depreciation of his earnings and earning power and will continue to suffer same for an indefinite period of time in the future, all to his great financial loss and detriment.

39. Solely as a result of the above incident and injuries sustained thereby, Plaintiff has suffered physical pain, mental anguish, embarrassment and humiliation and will continue to suffer the same for an indefinite period of time in the future, all to his great financial loss and detriment.

40. Solely as a result of the above incident and injuries sustained thereby, Plaintiff has been unable to engage in his usual and customary social and recreational activities

and other pleasures of life and will be prevented from engaging in such activities in the future, all to his great financial loss and detriment.

41. The aforesaid acts of negligence, carelessness, gross negligence, and recklessness were committed in conscious disregard of, or indifference to high degree of risk of harm posed thereby.

WHEREFORE, Plaintiff, Sheldon Engler, demands judgment in his favor and against Defendant, Trader Joe's Company, on Count I of the Complaint, in an amount in excess of One Hundred Fifty Thousand and 0/100 Dollars ($150,000), plus delay damages, interest and costs of suit.

## COUNT I I

### Carol Engler v. Trader Joe's Company

42. Plaintiff, Carol Engler, incorporates by reference paragraphs 1 through 41 of this Complaint as if fully set forth at length herein.

43. As a sole result of the conduct of Defendant as set forth in Counts I above, Plaintiff, Carol Engler, has been obliged to incur and will continue to incur for an indefinite period of time into the future many costs for medicine, medical care and attention, and hospitalization in an attempt to treat Plaintiff, Sheldon Engler, for the injuries sustained by him in the incident, all to her great financial loss and detriment.

44. As a further result of the conduct of Defendant as set forth in Count I above, Plaintiff, Carol Engler, has been deprived of the society, comfort, assistance and consortium of her husband, Sheldon Engler, and will continue to be deprived of the foregoing for an indefinite period of time into the future, all to her great financial loss and detriment.

WHEREFORE, Plaintiff, Carol Engler, demands judgment in her favor and against Defendant on Count II of the Complaint, in an amount in excess of Seventy Five Thousand and 0/100 Dollars ($75,000), plus delay damages, interest and costs of suit.

**COHEN, FEELEY, ALTEMOSE & RAMBO, P.C.**

BY:_____
Mark K. Altemose, Esquire
N.J. I.D. No.: 042211990
2851 Baglyos Circle
Bethlehem, PA  18020
(610) 625-2100
Fax:  (610) 332-2722
Email: maltemose@cohenfeeley.com
***Attorney for Plaintiffs***